UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| INTERMOUNTAIN FAIR HOUSING COUNCIL,<br><br>        Plaintiff,<br><br>    v.<br><br>CVE FALLS PARK, L.L.C.,<br><br>        Defendants. | Case No. 2:10-cv-00346-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it both parties' motions for summary judgment. The Court heard oral argument on July 6, 2011 and took the motions under advisement. For the reasons explained below, the Court will deny both motions.

## FACTUAL BACKGROUND

The plaintiff, Intermountain Fair Housing Council, learned of what it alleges are discriminatory housing practices by the Defendant, CVE Falls Park, LLC, and its employees, Eric and Tina Smithson, in early November 2008. An individual filed a complaint with Intermountain suggesting she had been discriminated against by CVE because of her handicap when she applied for an apartment at CVE's Falls Park

**MEMORANDUM DECISION AND ORDER - 1**

Apartments. As a result, Intermountain conducted two separate telephonic tests to gather evidence of the alleged discrimination.

On December 1, 2008, one of Intermountain's testers, Ms. House, called the Falls Park Apartments. Tina Smithson answered, and their conversation went in part as follows:

> . . . . **Ms. House**: The one bedroom, one bath was on the third floor?
> **Tina Smithson**: Yes.
> **Ms. House**: Okay. And what is the deposit?
> **Tina Smithson**: It's a two hundred and fifty dollar deposit, plus there's a one hundred dollar nonrefundable administration fee. And the application fee is forty-five.
> . . . . **Ms. House**: Okay. Now, I do have a service animal.
> **Tina Smithson**: You do have a service animal?
> **Ms. House**: Uh-huh.
> **Tina Smithson**: Okay. Well . . . . , you have a form that you're supposed to fill out.
> **Ms. House**: Well, I have a prescription.
> **Tina Smithson**: Okay. That would be a nine hundred dollar deposit on the dog. Is it a dog?
> **Ms. House**: My service animal?
> **Tina Smithson**: Yeah.
> **Ms. House**: Yeah.
> **Tina Smithson**: The dog or a cat. It would be nine hundred dollars on the pet and then a hundred dollars nonrefundable on that.
> **Ms. House**: With the doctor's note, right?
> **Tina Smithson**: Right.
> **Ms. House**: All right. So, a nine hundred dollar deposit for my service animal and a hundred nonrefundable, so . . . .
> **Tina Smithson**: Right.

*Nagy Aff.* ¶¶ 8-10, Dkt. 32. Ms. Mabbutt administered Intermountain's second test on the Falls Park Apartments on February 25, 2009 via telephone, which went in part as follows:

> . . . . **Tina Smithson**: At this time I don't have any one bedrooms, but I do have a two bed, one bath on the second floor for the same price, six-o-five.

MEMORANDUM DECISION AND ORDER - 2

> . . . . **Ms. Mabbutt**: Okay. And then she [Ms. Mabbutt's "mother"] has a support animal, and do you have a policy on that?
> **Tina Smithson**: Yeah. It's a nine hundred dollar pet deposit.

*Nagy Aff.* ¶¶ 12-13, Dkt. 32.

Prior to administering the second test, on February 10, 2009, Intermountain filed an administrative complaint against CVE with the United States Department of Housing and Urban Development ("HUD"). But Intermountain withdrew its pending complaint on April 30, 2009 after the parties failed to reach a conciliated settlement. It believed seeking a judicial remedy would be more expeditious.

Therefore, on July 8, 2010, Intermountain filed a complaint in this Court alleging violations by CVE of the Fair Housing Act, 42 U.S.C. §3601 et seq. (2006), ("FHA") and common law negligence. It also sought declaratory judgment, permanent injunctive relief and damages for diversion of past and future resources, lost economic opportunity and frustration of its mission.

## LEGAL STANDARD

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255. If a claim requires clear and convincing evidence, the issue on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim. *Id*.

When cross-motions for summary judgment are filed, the Court must independently search the record for issues of fact. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of cross-motions for summary judgment – where both parties essentially assert that there are no issues of material fact – does not vitiate the court's responsibility to determine whether disputed issues of material fact are present. *Id.*

Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Circuit "has repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir.1988). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document. *Id.*

**MEMORANDUM DECISION AND ORDER - 4**

## ANALYSIS

**1.     FHA Legal Standard**

The Ninth Circuit applies "Title VII discrimination analysis in examining Fair Housing Act discrimination claims." *Gamble v. City of Escondido,* 104 F.3d 300, 304 (9th Cir. 1997). "A plaintiff can establish a FHA discrimination claim under a theory of disparate treatment or disparate impact." *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) (citing *Gamble*, 104 F.3d at 304-05). Intermountain's allegations pertain to disparate treatment. *See Compl.* ¶ 24-29.

"To bring a disparate treatment claim, the plaintiff must first establish a prima facie case." *Harris*, 183 F.3d at 1051. "[T]he prima facie case elements are: (1) plaintiff's rights are protected under the FHA; and (2) as a result of the defendant's discriminatory conduct, plaintiff has suffered a distinct and palpable injury." *Id.*; *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982). "Establishing the prima facie case affords the plaintiff a presumption of discrimination." *Id.*

"[T]he burden then must shift to the defendant to articulate some legitimate, nondiscriminatory reason for the action. To accomplish this, the defendant is only required to set forth a legally sufficient explanation." *Id.* (citations omitted).

However, "[o]nce a prima facie case is established . . . summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because

the crux of [the] dispute is the elusive factual question of intentional discrimination." *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1985). "When a plaintiff has provided direct and circumstantial evidence of discriminatory intent, [it] has established a prima facie case of disparate treatment and may be able to survive a motion for summary judgment on that evidence alone." *Id.* at 1008.

**2.    Application to Intermountain**

Whether a plaintiff is protected by the FHA – element one of *Harris*' prima facie discrimination case – is a function of its alleged injury from the defendant's discriminatory conduct – *Harris*' element two. *See Smith v. Pacific Properties & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004). Therefore, the *Harris* elements seem redundant. More specifically, to have standing under the FHA, Intermountain must "demonstra[te] [a] concrete and particularized injury giving [it] 'a personal stake in the outcome of the controversy.'" *Id.* (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). There would seem to be little difference between an alleged "concrete and particularized injury" (element one) and a "distinct and palpable injury" (element two). Intermountain's standing *and* its prima facie case derive from its alleged injury.

Such a relaxed standard aligns with Supreme Court and Ninth Circuit interpretations of the FHA. Section 3602 defines an "'[a]ggrieved person' [as] any person who (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. §3602(i). "'Person' includes one or more individuals, corporations,

**MEMORANDUM DECISION AND ORDER - 6**

partnerships, associations, labor organizations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11, receivers, and fiduciaries." 42 U.S.C. §3602(d). Accordingly, this circuit cited the Supreme Court in holding that "the sole requirement for standing under the Act is the 'Article III minima of injury in fact' [:] a plaintiff need only allege 'that as a result of the defendant's [discriminatory conduct] [it] has suffered a distinct and palpable injury.'" *Harris*, 183 F.3d at 1050 (quoting *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 372 (1982)). The plaintiff "need not allege that [it] was a victim of discrimination." *Id.* at 1050 (citing *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 115 (1979)). Rather, "any person harmed by discrimination, *whether or not the target of the discrimination*, can sue to recover for [its] own injury." *Id.* "'This is true, for example, even where no housing has actually been denied to persons protected under the Act.'" *Id.* (quoting *San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 475-76 (9th Cir. 1998)).

Consequently, the Ninth Circuit has found organizational standing for a plaintiff like Intermountain when it demonstrates a "personal stake" in the controversy by showing "(1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular housing discrimination in question." *Smith*, 358 F.3d at 1105.

First, Intermountain's organizational mission "is to advance equal access to housing for all persons without regard to race, color, sex, religion, national origin, familial status, or disability." *Mabbutt Aff.* ¶ 3, Dkt. 31. In *Smith*, the organizational

**MEMORANDUM DECISION AND ORDER - 7**

plaintiff's mission included "helping eliminate discrimination against individuals with disabilities by ensuring compliance with laws intended to provide access to housing." *Smith*, 358 F.3d at 1105. The court found that where "[p]art and parcel to this effort is ensuring an adequate stock of accessible housing for" the disabled, "[a]ny violation of the FHAA would therefore constitute a frustration of [the plaintiff's] mission." *Id.* (internal quotations omitted). Therefore, frustration of Intermountain's organizational mission directly follows from evidence of housing discrimination. *See Smith*, 358 F.3d at 1105.

Secondly, the *Smith* court held that the costs of "promot[ing] awareness of – and compliance with – [the FHA]" constituted a diversion of "scarce resources from other efforts." *Id.* at 1105-06. However, Intermountain "cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).

In its complaint, Intermountain estimated past and future diversion of resources, lost economic opportunity and frustration of mission damages. *Compl.* Appendix A, ¶ 1-4, Dkt. 1. It also provided an affidavit by its executive director, Richard Mabbutt, that reiterated the bases for these damage assertions: Intermountain "has had to devote significant resources to identify, investigate, document and take action to correct the Defendant's conduct, including but not limited to the sponsoring of fair housing training workshops in the region where the Subject Property is located and the incursion of litigation expenses," and Intermountain "will necessarily incur additional expenses in the

**MEMORANDUM DECISION AND ORDER - 8**

future to counteract the lingering effects of the Defendant's conduct through the monitoring of the Defendant's activities, publication and advertising costs, and the sponsorship of educational activities." *Mabbutt Aff.* ¶¶ 15-16, Dkt. 31.

A portion of Intermountain's alleged injury is of its own creation through litigation. *Id.* And the Court would prefer additional evidence substantiating the amounts of past expenditures and calculations for future expenditures. But CVE has not provided the Court with any reason to doubt Intermountain's alleged injuries. Thus, Intermountain has demonstrated both its standing and prima facie disparate treatment case, contingent upon providing sufficient evidence of discrimination. *See Lowe*, 775 F.2d at 1009.

**3.     Discrimination Determination**

As stated, the "elusive factual question of intentional discrimination," where "a plaintiff has provided direct and circumstantial evidence of discriminatory intent . . . may be able to survive a motion for summary judgment on that evidence alone." *Id.* at 1008-9.

Intermountain has alleged that Tina Smithson's statements constitute a violation of FHA §§ 3604(f)(1)[1], (2)[2] and (3)(B)[3]; 3604(c)[4] and 3617.[5] However, it is unclear whether

---

[1] "[I]t shall be unlawful to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any *buyer or renter* because of a handicap of (A) that buyer or renter, (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter." 42 U.S.C. § 3604(f)(1) (emphasis added).

[2] "[I]t shall be unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of a handicap of (A) that person; or (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that person." 42 U.S.C. § 3604(f)(2).

[3] "For purposes of this subsection, discrimination includes a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

MEMORANDUM DECISION AND ORDER - 9

Intermountain has standing to allege a violation of § 3604(f)(1). It appears narrower than § 3604(f)(2) because of its textual limitation to discrimination toward a "buyer or renter." *See Smith*, 358 F.3d at 1103-1104.[6] The language of § 3604(f)(2), however, lends itself to the interpretation of an aggrieved party discussed above. *See id.* In addition, § 3604(f)(3)(B) is more an example of discrimination under § 3604(f) than a separate portion of the statute that can be violated. Rather, the lynchpin appears to be § 3604(f)(2). If, due to Tina Smithson's statements, CVE discriminated "in the terms, conditions, or privileges of sale or rental of a dwelling … because of handicap," (§ 3604(f)(2)), then a violation of § 3604(c) is likely, and a determination as to § 3617 and common law negligence can be made.

Intermountain has cited various authorities in support of its allegations that define "discriminate" under § 3604(f). First, § 3604(f)(3)(B) defines discrimination as "a refusal to make reasonable accommodations in rules, policies, practices, or services, when . . . necessary to afford . . . equal opportunity to use and enjoy a dwelling." Illustrative of such would be an apartment manager "refus[ing] to permit [a blind] applicant to live in the apartment with a seeing eye dog because, without the seeing eye dog, the blind person

---

[4] "It shall be unlawful to make . . . or cause to be made . . . any . . . statement . . . with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . handicap . . . or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c).

[5] "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617.

[6] The Court invites the parties to submit additional briefing prior to trial addressing this issue: whether Intermountain has standing to allege a violation of §3604(f)(1), despite the apparent textual narrowing and the Ninth Circuit's position in *Smith*.

MEMORANDUM DECISION AND ORDER - 10

will not have an equal opportunity to use and enjoy the dwelling." 24 C.F.R. § 204(b), Example (1). HUD and the United States Department of Justice have further clarified that a "housing provider may not require the applicant to pay a fee or a security deposit as a condition of allowing the applicant to keep the assistance animal." *Joint Statement of the Dept. of Housing and Urban Dev. and the Dept. of Justice*, "Reasonable Accommodations under the Fair Housing Act," at p. 9, ¶11, Example 2 (May 17, 2004). "However, if a tenant's assistance animal causes damage to the applicant's unit or the common areas of the dwelling, the housing provider may charge the tenant for the cost of repairing the damage . . . if it is the provider's practice to assess tenants for any damage they cause to the premises." *Id.*

The Ninth Circuit has also provided guidance on determining whether or not a defendant has refused to make a reasonable accommodation:

> [A] *plaintiff* must prove all of the following elements: (1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation.

*DuBois v. Assoc. of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006) (emphasis added).[7] In the realm of organizational standing where a plaintiff need not even be a victim of discrimination, the first element, clearly tailored to a bona fide

---

[7] *Compare with Giebler v. M & B Assocs.*, 343 F.3d 1143, 1147 (9th Cir. 2003) ("a plaintiff must demonstrate . . .") (emphasis added) *and McGary v. City of Portland*, 386 F.3d 1259, 1262 (9th Cir. 2004) ("a plaintiff must *allege* . . .") (emphasis added).

MEMORANDUM DECISION AND ORDER - 11

renter or purchaser, is not relevant here. *See Harris*, 183 F.3d at 1050. But the remaining four elements inform the discrimination inquiry and should be applied.

Though it is Plaintiff's burden to at least allege the applicable reasonable accommodation elements, the Ninth Circuit has "repeatedly interpreted [§ 3604(f)(3)(B)] as imposing an 'affirmative duty' on landlords . . . to reasonably accommodate the needs of disabled individuals." *McGary*, 386 F.3d at 1261-1262. Thus a culpable defendant must either know or under the circumstances reasonably be expected to know of the handicap. *Dubois*, 453 F.3d at 1179.

Federal fair housing regulations also more generally prohibit "[u]sing . . . security deposits . . . because of . . . handicap." 24 C.F.R. § 100.65(b)(1). And discrimination includes "discouraging any person from . . . renting a dwelling because of . . . handicap." 24 C.F.R. § 100.70(c)(1).

CVE has contested the regulations' and the Joint Statement's authoritative value. However, "[t]he Secretary of Housing and Urban Development ('HUD') ordinarily commands considerable deference in interpreting the FHA." *Harris*, 183 F.3d at 1051 (citing *Plaff v. HUD*, 88 F.3d 739, 747 (9th Cir. 1996)). HUD's "interpretation of the statute" should be "review[ed] with deference." *Id.* (quoting *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984)). Accordingly, the definition of discrimination developed by HUD is authoritative. The regulations and illustrations require no lengthy inferential leaps. Indeed, a plain reading of §3604(f)(3)(B) suggests that imposing an additional security deposit for a service animal made necessary

**MEMORANDUM DECISION AND ORDER - 12**

by a tenant's handicap is discriminatory. Requiring such a deposit constitutes a failure to provide the reasonable accommodation of waiving a general pet deposit or no-pet policy.

CVE has also attempted to compare the class of handicapped service animal owners with other tenants who own animals, stating that its policy is "equally applicable to *all* tenants with animals." *Def.'s Br.* at 8, Dkt. 24. But this compares handicapped individuals with the wrong class. The basic premise of § 3604(f) is to put handicapped individuals on the same plane as if they were not handicapped at all, giving them an "equal opportunity to use and enjoy a dwelling." § 3604(f)(3)(B). Therefore, if Tina Smithson's statements are interpreted by the fact finder as referring to CVE's policy for handicapped individuals with service animals, then the rule developed by HUD and informed by *Dubois* would be applicable.

Intermountain bears the initial burden of establishing a prima facie case alleging as much. *Harris*, 183 F.3d at 1051. If it does so with direct or circumstantial evidence of discriminatory intent, Intermountain can shift its burden to CVE. *Id*.; *Lowe*, 775 F.2d at 1009. Intermountain's primary evidence is a transcription of its testers' telephone conversations with Tina Smithson. CVE has gone to great lengths to classify her statements as merely pertaining to Falls Park's general animal pet deposit policy. *Def.'s Br.* at 4, Dkt. 24. On the other hand, Intermountain posits that the discriminatory nature of her statements is indisputable. *Pl.'s Br.* at 6, Dkt. 17.

Direct evidence "is defined as 'evidence of conduct or statements . . . that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit

**MEMORANDUM DECISION AND ORDER - 13**

the *fact finder* to infer that [the discriminatory] attitude was more likely than not a motivating factor in the . . . decision.'" *Enlow v. Salem-Keizer Yellow Cab Co., Inc.*, 389 F.3d 803, 812 (9th Cir. 2004) (quoting *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 426 (8th Cir. 1993)).

The parties' differing interpretations of Tina Smithson's statements demonstrate a level of ambiguity. Further, without the context of Ms. House's and Ms. Mabbutt's questions, Tina Smithson's statements seem only to pertain to CVE's general pet deposit policy. But taking the conversations as a whole, the fact finder has plenty from which to infer discrimination. Absent controverting evidence from CVE, it would be easy to infer that CVE is *unwilling* to make reasonable accommodations for handicapped individuals with prescribed service animals or that CVE is seeking to discourage such individuals from applying for tenancy. For example, after Ms. House indicated that she had a "prescription" for her service animal, Tina Smithson stated that there would be an additional "nine hundred dollar deposit on the dog." *Nagy Aff.* ¶¶ 9-10, Dkt. 32. Ms. House asked, "With the doctor's note, right?" *Id.* Tina Smithson confirmed, "Right." *Id.* Similarly, when Ms. Mabbutt asked about their policy on "support animals," Tina Smithson responded, "Yeah. It's a nine hundred dollar pet deposit." *Id.* at 13.

Accordingly, this direct evidence substantiates Intermountain's prima facie case and shifts the burden to CVE. *Harris*, 183 F.3d at 1051. It appears that CVE's "legitimate, nondiscriminatory reason for the action" (*Id.*) is that Tina Smithson was "merely communicating [CVE's] policy of charging a deposit for animals." *Def.'s Br.* at

MEMORANDUM DECISION AND ORDER - 14

4, Dkt. 24. In support of this position, CVE has provided an affidavit by Tina Smithson stating that "Falls Park . . . has a general policy to evaluate and grant reasonable accommodation requests by tenants with disabilities," and it "currently has five disabled/handicapped individuals who retain animals in their residences [all of whom have] requested and received a reasonable accommodation in the form of a waiver of the regular animal deposit." *Smithson Aff.* ¶¶ 9, 18, Dkt. 25.

Believed as true, this evidence demonstrates that CVE does grant reasonable accommodations for handicapped individuals with prescribed service animals. It directly rebuts Intermountain's evidence and shows a genuine issue of material fact yet to be resolved.

**4.     Conclusion**

Whether Falls Park Apartments discriminates on the basis of handicap is a question that must survive summary judgment because of Intermountain's establishment of a prima facie case and CVE's provision of controverting evidence. *Lowe*, 775 F.2d at 1008. The remaining elements of Intermountain's claims all hinge on a finding of discrimination, which must be left to the finder of fact. *Id.* at 1009.

### ORDER

**IT IS ORDERED:**

1. Both Motions For Summary Judgment (Dkt. 16 and 22) are **DENIED**. The Court invites the parties to submit additional briefing on whether Intermountain has standing to allege a violation of §3604(f)(1), despite the

apparent textual narrowing and the Ninth Circuit's position in *Smith v. Pacific Properties & Dev. Corp.*, 358 F.3d 1097, 1103-1105 (9th Cir. 2004).

DATED: July 20, 2011

B. Lynn Winmill
Chief Judge
United States District Court

**MEMORANDUM DECISION AND ORDER - 16**